First case of the day is Joshua Andrew Odom v. Jesse White, Secretary of State. We have Israel Sloan for the appellant, and we have Janan Fabiano for the appellee. You may begin when you're prepared to, Mr. Sloan. May it please the Court, Counsel, my name is James Israel Sloan. I represent the plaintiff appellants Joshua Odom and Jason James. These two cases have been consolidated because they, and several other cases that are appearing before the Secretary of State at this time, have a very similar fact pattern that I believe needs clarification of the law. In each of these instances, the plaintiffs weren't involved in a motor vehicle crash. In both instances, I believe the record shows that a party suffered only minor injuries. And in both of these cases, an injured party was transported from the scene of the accident to a medical facility by an ambulance. In both cases, the officer, when filling out the traffic crash report, indicated that there was a type B injury to the injured person. In both cases, the plaintiff's appellant's driving privileges were suspended pursuant to 625 ILCS 56206831 by the Secretary of State. In both of these cases, that suspension was contested in front of the Secretary of State administrative hearings, and the Secretary of State upheld the suspension. And in both of these cases, then, there was an administrative review filed in the Jefferson County Circuit Court with the circuit judge upholding the Secretary of State's decision. Did I get that correct? The officer wrote down a type B each time? Type B injury in each case on the traffic crash accident report. Yes, they did. Section 625 ILCS 56206831 of the Illinois Vehicle Code provides that the Secretary of State can discretionarily suspend a driver's driving privileges if they refuse or fail chemical testing pursuant to 625 ILCS 511501.6. 625 ILCS 511501.6 is an implied consent statute, and it requires for chemical testing to be conducted for any driver who is involved in an accident that involves either personal injury or a fatality. A unique thing about Section 511.6 is that there is no probable cause requirement to conduct such testing. So, in theory, a person who had never had anything, any alcohol, illegal drugs in their life, could be involved in a motor vehicle accident, could suffer a type A injury, let's say severely bleeding wounds, and the officer, without any suspicion of drug or alcohol use, could request that this driver submit to a blood test. And if that driver would refuse, they could have their driving privileges suspended for a year. So, again, it's very important, the fact that there is no probable cause requirement under that section. In this case, we've got a motor vehicle accident. We've got, in each case, a driver submitting to chemical testing and failing that chemical testing. So, the question element that needs to be determined, if it is present, is whether or not there was a personal injury involved in this accident. 511.501.6G defines a personal injury as any type A injury, as indicated on the traffic crash report completed by a law enforcement officer, that requires immediate professional attention in either a doctor's office or a medical facility. It goes on to say that type A injuries shall include severely bleeding wounds, distorted extremities, or any injury that requires that a person be carried from the scene. The Supreme Court has waived the constitutionality of 511.501.6. Originally in King v. Ryan in 1992, the court found the statute to be unconstitutional because there was not an exception to the special needs, exception for the requirement of either a warrant or probable cause before conducting chemical testing. So, the legislator went in and cleaned up the statute a little bit, and then it was waived again in 1996 in the case of Fink v. Ryan. And the court then found the statute to be constitutional with the new language that was added of a type A injury, and a type A injury including the severely bleeding wounds, distorted extremities, or accidents that require a party to be carried from the scene. I think it's very important that in Fink, the Supreme Court wrote that personal injuries requiring only a visit to a doctor's office or medical facility can no longer be the basis for testing, thus the legislature's more particular definition of a type A injury subjects a driver to chemical testing in only the more serious of cases. And it's my argument that in these two cases, these aren't the serious cases, the parties in these cases only suffered very minor injuries. In the case of Mr. Odom, it was a single vehicle accident. His on-star actually alerted the ambulance and the ambulance records, the records from Franklin Hospital, they all indicate that Mr. Odom only suffered minor injuries. With respect to the on-star, can you tell me how that works? I'm not very sure, but he had an accident and he had an on-star system. But did he communicate with the ambulance? I think it just automatically alerted the ambulance. Bag deployment, I think. If you have bag deployment, it automatically notifies. Okay. So the ambulance was automatically alerted. Mr. Odom actually, you'll see the ambulance records indicate he denied having any pain or injuries. He testified he didn't want to go to the hospital, but he was directed, I believe, by medical personnel that he had to. So he proceeded to the hospital, and the records show that there was bleeding from his hairline. They couldn't even find the wound, and he was checked out and immediately released from the hospital. In the case of Mr. James, a passenger in his vehicle, a Ford Westin Harris, was injured. Again, the only testimony at the administrative hearing was from Mr. James, that Mr. Harris just had very minor injuries that I think was just a small laceration over his eye, and that he did not want to go to the hospital, but was told that he had to by medical personnel, and that once he got there, they checked him out and said he was okay, and almost immediately released him. So there's a lot of ancillary points in this case, but I think at the center of it is the question of whether or not the fact that someone is merely transported to the hospital by ambulance, if that constitutes a type A injury. The Secretary of State at the administrative hearings upheld the suspension, saying that that alone was enough to constitute a type A injury. At the circuit court level, they upheld the Secretary's decision, and I know Judge Gamber in Mr. James' case specifically wrote that the mere fact that he was taken, in the James case, that the passenger was taken by ambulance from the scene to a hospital was enough to constitute a type A injury. And I believe that the Supreme Court has already weighed in on this, and I think that is in direct contrast to what the Supreme Court says, because in Fink it specifically says that if you're taken to a medical facility or a doctor's office for treatment, that is not enough. Because of this exception to the probable cause warrant requirement, 501.6 only applies to cases when there is a very serious accident. And I don't think we have that in either of these cases. Also, it's very important, a personal injury, the statute I think makes it clear, I think the Secretary of State would concede this point, it has to be a type A injury. And in both cases, the traffic crash report filled out by the officers, there is a section to indicate what type of injury was suffered in the case. And in each case, it doesn't say a type A injury, but in each case, the traffic crash report indicates that there was a type B injury. The Secretary of State at the administrative hearing argues some legislative intent and public policy reasons, why it's all right to suspend a person's driving privileges, even if there wasn't a type A injury. They seem to create this new standard, a reasonable, the officer had a reasonable grounds to believe that there was a type A injury, is what they talk about. They cite no authority to use this standard, because quite frankly, I don't think there is one. I think it's contrary to what the statute says. Who do you think then should be the one that evaluates the severity of the injury under the language of the statute? I think it's up to the officer. I really do. I think they need to do their job a little bit better. And I think in each case, and that's what I'm going to get into, that in each of these cases, they did not even make any reasonable grounds. And I think there needs to be a determination before they fill out a law enforcement sworn report, a traffic crash warning to motorists, and before they swear under oath that there is a type A injury on these forms. I think they need to know that there actually is a type A injury. In each of these cases, I think there was some poor police work. I think they just saw that there was an ambulance there and someone was being taken to a medical facility, and without any further investigation, they just wrote it up. They just decided to proceed under this 625 ILCS 511-501.6. It says, in injuries that require the injured party to be carried from the scene, isn't that a separate determination than distorted extremities and severely bleeding wounds? Aren't there three distinct reasons you could require this test to be taken? Yes, I think there is. It seems like you continually combine two of them together. Okay. Well, and part of my argument, I guess, is that these, even though these people were taken from the scene to a medical facility, it was not a requirement. I think that... You wouldn't have to have the distorted extremities or bleeding wounds. If it was necessary that you be taken, carried from the scene, you could have a less serious injury. That is correct, if it was necessary. And my argument is that you're going to see a lot of situations, whether voluntarily, through acquiescence, or at the direction of someone providing medical assistance or the police, that they are going to direct someone to go to a medical facility when it is not specifically required. And I think common sense sort of tells us that precautionary measures, a lot of times, are going to be taken in these instances, even if the injuries are not severe enough to fall under the narrow scope that FINKS sets out. Is that a medical... What I'm getting at, is that a lay or an expert decision on whether it's reasonable? If it's a medical decision, can... Does the lay person make that decision? I think the decision is ultimately up to the police officer, the arresting officer, in these cases. But I think if you see in these cases, each time the warning to motorists, the submission to the breath test, it was done at the medical facility, in Jane's case, at Franklin Hospital, in Odom's case, at Franklin Hospital, and in Jane's case, at Memorial Hospital. But I know that the officers did not check with medical personnel to see what the extent of the injuries were. Is it proper for the policeman to rely... The fact that medical personnel took him from the scene, is it proper for him to rely on that? I don't think... What was their opinion since they took him? I don't think it is. I think that, again, in FINKS, the language that the Supreme Court says is mere... The fact that they were taken to a medical facility or a doctor's office, that is not enough. They want to narrow the spectrum to the more serious types of accidents. Can the policeman consider that as a fact in making the determination? I think they should be able to consider it, but I think there's other factors that need to go in there. In both of these cases, when we were at the administrative hearings, the officers were asked, what were the extent of the party's injuries? And the officers, and it was Deputy Harbison, in Mr. Odom's case, even at the administrative hearings he testified, he had no idea what the extent of the injuries were. Well, isn't that answer pretty appropriate, considering he's a layperson? And I'm reading along those same lines, it does say, and injuries, after it's talked about the severely bleeding wounds, distorted extremities, and, so it uses the conjunctive injuries that require the injured party to be carried from the scene. If there's a severe enough accident that, I think one of them had to be cut from the vehicle, if you're asking a law enforcement officer to determine perhaps whether or not there's internal injuries, that type of thing, how would an officer be able to determine that? I think they could check with medical personnel, again, who were at the hospital, they could find out what the extent of the injuries were. They could, by observation, I know in the Jaynes case, they said they just saw someone getting worked on in an ambulance. They didn't go over and check the person out. In fact, in the Jaynes case, they didn't even know the identity of the injured person. So, to follow that, you're talking about retroactively determining whether or not there was a requirement. I don't think it has to be done immediate, it doesn't have to be right on the scene. Again, in each of these cases, the officers went to the hospital for further investigation involving the criminal case, but they didn't do any further investigation trying to determine what the extent of the injuries in these cases were. And again, I get back to the point that I think they're just looking and seeing that someone is taken from the scene by ambulance, and again, I go back to that is not what FINK says. FINK specifically says that the mere fact that someone is transported to a medical facility or a doctor's office, that is not enough. Because of the absence of this probable cause requirement in these cases, they want to narrow the spectrum and only want this section to apply to the most serious of accidents. And in each of these cases, I think the record shows that parties only suffered very minor injuries. Let me add, in one of the accidents, they rolled the vehicle two or three times, and the guy's pinned in the vehicle and can't get out. So they take him to the hospital to rule out internal injuries or a head or concussion, and it turns out he's got nothing. Yes. Now, is the fact that he's got nothing when he gets to the hospital the determinative thing, or the fact that good medical practice would be to rule out the possibility of internal injuries or a head injury? I think once he got to the hospital and it was determined that there weren't any of those injuries, it's the officer's duty to further investigate to find out what the extent of the injuries were. And in this case, the officer did not do this, and in fact, these injuries did not exist. And in the case you're talking about, Mr. Odom, the ambulance records show he's saying, I'm not in any pain, I don't have any injuries, I don't want to go. Even though it may make sense to take and conduct these tests to make sure he's not sick. I agree. I do agree with that, that people are going to go for precautionary measures. And I do think for precautionary measures, people are going to be sent to the hospital, especially in this day of litigation. But just because they're sent to the hospital for these precautionary measures does not mean that injuries are severe enough to fall under the Supreme Court's definition of a type A injury in FINK. Thank you. You have the opportunity to be part of the bubble. And we have Janan Fabiano for the appellee. May it please the Court, I'm Janan Fabiano. I'm an Assistant Attorney General here on behalf of the Secretary. Could you speak up a little, because we are recording and it doesn't do well if you don't. Okay. The Secretary denied the plaintiff's petitions to rescind their driver's license suspensions because he found that they were required to submit to testing under the Illinois Vehicle Code and that they did so and that their test disclosed blood alcohol levels well above the legal limit. And Section 11-501.6 of the Code provides that a driver is deemed to have consented to testing if they are involved in a motor vehicle accident, the accident resulted in either a fatality or a personal injury, and the driver was arrested for a non-equipment violation of the Code. And in asking this Court to reverse the Secretary's decision, the plaintiffs are arguing only that the Secretary erred in finding that the accident resulted in a personal injury. But contrary to their argument, the Secretary's determination in this regard was not clearly erroneous, where in both of the accidents the evidence established that somebody, either a driver or a passenger, was carried from the scene of the accident by an ambulance to a hospital. And the Code specifically defines personal injury, and it states that it is any type A injury as indicated on a traffic crash report completed by a law enforcement officer, and that type A injuries include severely bleeding wounds, distorted extremities, and injuries requiring a person to be carried from the scene. Is it your position that the fact he was carried from the scene is sufficient to meet this statute? Yes. Even if the ambulance driver only makes $250 if he takes you to the hospital, it's going to be sufficient in all cases for this statute to be enforced? Well, I'm saying that whether or not it is reasonable is a case-by-case determination, but generally if you have medical personnel at the scene deciding that an individual should be carried by ambulance to a hospital, that it is reasonable for a police officer then to believe that the statutory definition has been met. Does the record in this case reflect that they had medical training? No. No, I mean, no, the statute would have... You can go ahead and turn it off. That's all right. In... Did they have medical training? Is there record in there that they do have this medical training that gave them qualification to make this decision? No, the police officers would have no specific, or at least limited medical training. The ambulance personnel. The firemen, did they? Usually they're firemen. Well, they would have some medical training. Is it in the record? Oh, no, the record does not contain evidence as to that. Does the record tell us whether or not both of the injured parties refused to be transported or did they acquiesce or ask to be transported? There is evidence that they said that they did need to be transported and that they were... They acquiesced then. They acquiesced. They weren't taken against their will, but they didn't refuse in the sense that they said, I'm not going. Correct. But in defining a personal injury as it did, the legislature must have intended that whether an accident resulted in a personal injury sufficient to warrant testing to be based upon what a reasonable police officer under the circumstances would have determined and not on medical certainty. As explained, it would not be reasonable to require a police officer to have medical certainty. They are not medical professionals themselves. They have limited medical knowledge. They're required to make the decision quickly in light of the fact that blood alcohol levels are fleeting. And the statute itself defines personal injury in terms of demonstrating that it is a determination that is made by the investigating officer. Therefore, the legislature must have intended that whether or not an accident resulted in a personal injury to be based upon what a reasonable police officer under the circumstances would have determined. And in both of these cases, it was reasonable for the police officers to have determined that the accident resulted in a type A injury. But the police officer in this case said it didn't. He said it was a class B. On one of the reports, he did check the box. So that one we don't throw out? No, but both of the reports in these cases also contain narratives. And the narratives in the reports demonstrated that a type A injury did occur in both of these accidents. I mean, they described the medical report. The traffic crash reports also have a narrative that's attached to the report. So he made a mistake when he wrote down B. You know, the record does not contain any indication of why he marked B. Well, I'm not worried about why. I'm just worried what. Yes, but the report as a whole, when you look at the report as a whole, including the narrative where they describe what occurred, it's clear that they're describing a type A injury. I wonder what did they describe as a type A? Was it bleeding or was there an extremity that was broken? No, they described that individuals, that when they came upon the scene, there was an individual. In the one case, the individual was in the car, and then when the ambulance personnel arrived, they removed them from the car. Well, let's stop there for a minute. In most very minor incidents, when you arrive at the scene, the individual will be in the car because it's so minor they're not going to get out. Well, in these cases, I mean, the accidents were not minor. I mean, you're involved. I'm just talking about the general type of accident. If we're going to rule on this, I think we have to have everything in mind. So, in other words, if they're in the car, you got more likely to have a B, a class A injury is what you're saying because they're still in the car. Is that what you're saying? No, no, no. Okay, so if they're out of the car. I'm saying that the reason there is a type A injury here is that these were individuals that were placed on a stretcher. They were carried to the ambulance and they were taken by ambulance to the hospital. And the statute specifically defines personal injury as including injuries that would require an individual to be carried from the scene of the accident. That doesn't mean anything. Require doesn't mean anything. Because most times, the fireman who comes to the scene will say, I wish you'd get on the stretcher and go because if not, I'll lose my job. That's about what they say, isn't it? I'm required to take you. I'm here with the ambulance. Well, there's no evidence. I know there's no evidence. Isn't that what usually happens though? No? No. Okay. In both of these cases, you have individuals that are being placed on a stretcher, taken by an ambulance to a hospital at the discretion of the ambulance person. In addition to that, in the Odom case, the police officer did testify that when he came upon the car, the individual was in the car and he appeared to be unable to get out of the car, both due to the physical condition of the car as well as the condition of the individual. And he stated that it did not appear that he would be able to walk away from there. How could he tell he couldn't walk? Because he was sitting. He said that the way that the individual was sitting in the car, he appeared that he would have been unable to get out of there himself. What kind of car was this? I'm not sure. I mean, say it was a Lincoln. Don't all the doors lock as soon as you drive down the street about 50 feet? So you're in a locked car. Maybe a little confused. He was saying that due to the physical condition of the individual. So he did it. Would you agree that there is some room for abuse of this statute if a police officer were to want to make sure that there was blood drawn? Well, the police officer is just making a determination based upon what he's observing at the scene. And it's the ambulance personnel that are deciding that in their discretion an individual should be removed from the scene and taken to the hospital. So I don't think there would be any abuse on the police officer. Well, you know what? I think Justice Chapman, they used the word required because they wanted to add something. They could have just said remove from the scene and an ambulance should take it. They didn't have to say required. So they must have meant something extra. That means something. And we have to be sure it was met in this case. Now, it appears you're telling us that any time they're removed from the scene, we just eliminate the word required. Well, no. I would say that the reasonables would be a determination made on a case-by-case basis and that generally when you do have an individual that is getting removed from the scene of the accident by the ambulance personnel at their discretion, they do have a need to be removed. They are required to be removed. So we're going to defer to the ambulance driver decision to remove them. And that's the whole basis of the police officer's decision, and what the ambulance driver decided. Is that what you're saying? Well, and again, in these cases, I mean, there was additional evidence. The police officer himself was testifying that it looked like the individual himself wasn't going to be able to walk away from the accident. So you say it's that decision plus other things. Yes. Okay. But in that particular case, I believe, if I've got my facts correct with the case, that was the one that the officer also put that it was a type B injury. He did indicate that. You know, on these reports they have just a box where you would put a letter, an A or B. But in addition to that, the report does contain a narrative where then he goes on to explain what has occurred in the accident. And in the narrative he explains that, you know, that an individual was in the car, that he was taken, you know, placed on a stretcher, that they did place a seat collar on him, that they then did carry him from the scene of the accident. But none of those are all very objective factual scenarios. None of that would answer the question for me whether or not he believed that they were required to be carried from the scene due to injuries that would fall into this more severe category. Again, well, you have the testimony of the police officer, again, saying that in his judgment he believed that he was required to be. He stated that he believed that he was not going to be able to walk away from the accident himself, and that in his judgment the ambulance was required. Could you have a type B injury and still be required to be removed from the scene? I mean, you would not need to have a type A injury to be required to be carried from the scene of the accident. And again, the report, the traffic crash report, isn't something that should that the legislature would have intended to be controlling as to whether or not there is a personal injury. I mean, the report is something that is prepared, that is sent on to the Department of Transportation, and they have ten days within which to submit the report. So the report can be based upon information that is not available to the police officer at the time he has to make his decision. So for all of these reasons, we would ask that the Secretary of Who summoned it? Was it the police officer or was it just the OnStar, or was it SawPasserBy? In the one case, OnStar had summoned it. In the other case, the ambulance was already there when the police officers arrived. He doesn't know how it got there? No. Thank you, Mr. Fabiano. Mr. Sloan? Mr. Fabiano said that the legislature does not intend the traffic crash report to be controlling. But what I'm reading under 625-511-501.6G, which defines a personal injury, it says a personal injury is any type of injury as indicated on the traffic crash report completed by a law enforcement officer. I think it is controlling. I think that the traffic crash report, by the language of the statute, has to indicate that there is a type A injury. Again, she said, well, there's just a little box to put what type of injury it is. That's what the officer is supposed to do. They're supposed to indicate what type of injury occurred. And by statute, that's what they're supposed to do. And it's in both cases. Look, on the traffic crash report, that box is filled out with a B, not an A. It says type B injury occurred. And by the language of the statute, it says the officer has to put that there's a type A injury there. There is some language in these cases that says a party was carried from the scene by ambulance in the supplement. But, again, the part on the face of the statute where it has a box to indicate the type of injury, each case says type B. And, again, I think we're getting back to the question is whether the mere fact that they are taken, that someone is taken by ambulance from a medical situation of a type A injury. And I would argue that it's not. I would argue that the Supreme Court in 1996 in the case of Fink v. Ryan said it is not. Again, this is supposed to be a very narrow spectrum of accidents that are subject to this section. There's other sections they can proceed under, 11-501.1. That deals with the statutory summary suspension, which would have very almost exact penalties as 501.6. But there's a probable cause requirement under the statutory summary suspension section. I will concede that it would have been perfectly appropriate for the officers to proceed under 501.1 in this case, which is the statutory summary suspension. But that is not the section that they chose to proceed under. They chose 501.6, which has this, which takes out, which does not require any probable cause. And in 501.1, you have to have a probable cause showing, which they could have done in this case, and it would have been totally appropriate. So the state is not, you know, it's not left without remedy to, because it does have a compelling interest to keep its drivers safe. But I just think he proceeded under a statute and could not prove one of the elements under that particular section, which, that there was a personal injury in this case. And, again, the, look at the face of the traffic correction report. In each case, it says type B. So, thank you very much. Thank you. Thank you. Mr. Cronin, thank you. Thank you, Mr. Fabiano. And I'm going to take that. Thank you. Thank you.